24226.  WARD, Chairman of Georgia Milk Commission v.
BIG APPLE SUPER MARKETS OF BOLTON ROAD, INC.
et al.

ARGUED SEPTEMBER 13, 1967—DECIDED OCTOBER 20, 1967—
REHEARING DENIED NOVEMBER 9, 1967.

*Arthur K. Bolton, Attorney General, G. Ernest Tidwell, Executive Assistant Attorney General, George J. Hearn, III, Assistant Attorney General, Joel Feldman, Joseph A. Nardone, Deputy Assistant Attorneys General, Larry D. Ruskaup,* for appellant.

*Arnall, Golden & Gregory, Cleburne E. Gregory, Jr., H. Fred Gober, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Emmet Bondurant, George B. Haley, Jr., Hansell, Post, Brandon & Dorsey, Hugh M. Dorsey, Jr., Jule W. Felton, Jr., Milton A. Carlton, Jr., Troutman, Sams, Schroder & Lockerman, William H. Schroder, Elliott Goldstein, Powell, Goldstein, Frazer & Murphy, C. B. Rogers, A. C. Latimer, J. Lee Perry,* for appellees.

*Heyman & Sizemore, W. Dan Greer, Fisher & Phillips, William W. Alexander, Jr., Harmon & Thackston, Nolan B. Harmon, Sanders, Hester & Holley, Carl E. Sanders, Perry, Walters, Langstaff & Lippitt, H. H. Perry, Jr.,* for parties at interest not parties to record.

PER CURIAM.  The appeal is from a judgment of the Superior Court of Fulton County sustaining the general demurrers to the petition brought by Clifton A. Ward, Chairman of the Georgia Milk Commission, praying that the named defendants, who are alleged to be corporations engaged in the sale of milk and other dairy products within the Atlanta Milk Shed to retail customers at less than the price fixed by the Georgia Milk Commission, be temporarily and permanently enjoined from continuing to sell milk below the price fixed by the commission.

The question presented is whether the price fixing provision

of the Milk Control Act violates the due process clause of the Constitution of Georgia. While there are other assignments of error, a ruling on this question decides the case. For that reason the decision is limited to this issue.

This court in the full bench decision of *Harris v. Duncan,* 208 Ga. 561 (67 SE2d 692), held that the Act (Ga. L. 1937), p. 247, as amended; *Code Ann.* § 42-523 et seq.), conferring upon the Milk Control Board the authority to fix the price of milk, violates Art. I, Sec. I, Par. III of the Constitution of Georgia (*Code Ann.* § 2-103), the due process clause, in that it restricts the freedom of contract. See also *Williams v. Hirsch,* 211 Ga. 534 (87 SE2d 70). This full bench decision can be reversed only by the concurrence of all seven Justices of this court, unless there has been some material amendment, or facts that would make the question of law different from that existing in the older decision.

In 1952 (Ga. L. 1952, pp. 55-70) the General Assembly amended the 1937 Act (Ga. L. 1937, pp. 247-264), as previously amended, which amendment, as the commission contends in its brief, was an "attempt to provide and maintain freedom of contract by providing a procedure through which contracting parties might go in order to arrive at a price of their choosing. . ." However, the commission in its brief and in oral argument concedes that the issue in the present case is whether the price fixing provision violates the Constitution, and states that the case should be decided on that question, with which we agree. We find that the issue is the same as in *Harris v. Duncan,* 208 Ga. 561, supra, in which event the commission asks that it be overruled. Seven Justices of this court are not willing to overrule it; thus it controls this case.

There is no merit in the commission's contention that *Harris v. Duncan,* supra, is not a full bench decision because of the special concurrence of Chief Justice Duckworth, as he concurred in the ruling that the Milk Control Act violates the due process clause of the Georgia Constitution. The basis of his special concurrence was that he was of the opinion that the court was in error in holding that the Act violated the Federal Constitution, because, as he stated: "Insofar as the Federal question is

concerned, we are precluded by the decision in Nebbia v. New York, 291 U. S. 502, and would be required to sustain the Act as against the attack based upon the Federal Constitution." *Harris v. Duncan,* 208 Ga. 561, supra, at p. 566.

It is further argued that the *Harris* case is not a binding precedent because the decision was predicated on the erroneous assumption by the court that the emergency provision of the Milk Control Act was eliminated by the 1949 amendment. The court there began the opinion with the statement: "The Act (Ga. L. 1937, p. 247), as amended (*Code Ann.* § 42-523 et seq.), with the emergency feature thereof stricken by the Act of 1949, p. 78, is here attacked on the ground that the authority therein to fix the price of milk is in violation of" the due process clause of the State Constitution. Whether or not the court was in error in assuming that the emergency provision of the Act had been stricken, the court ruled (p. 563) that: "Before the General Assembly can authorize price fixing without violating the due process clause of our Constitution, among other requirements, it must be done in a business or where the property involved is 'affected with a public interest,' and the milk industry does not come within that scope."

We do not agree with the contention of the commission that the older case of *Fleisher v. Duncan,* 195 Ga. 309 (3) (24 SE2d 15), a full bench decision, is controlling in the present case. The court there stated: "Since the petition failed to show a right to injunctive relief, for the reason stated, it is unnecessary to determine other questions raised—as to whether plaintiffs also had an adequate remedy at law . . . ; and whether the Act was unconstitutional for any reason assigned that has not already been decided. See *Holcombe v. Ga. Milk Producers Confederation* [188 Ga. 358 (3 SE2d 705)]; *Bohannon v. Duncan,* 185 Ga. 840 (196 SE 897); *Gibbs v. Milk Control Board,* 185 Ga. 844 (196 SE 791), and cit." As to the constitutional questions raised, the court merely stated that since the petition failed to state a cause of action for injunctive relief, it was unnecessary to determine "whether the Act was unconstitutional for any reason assigned that has not already been decided," in other words, for any *additional* reason not included

in those already decided in the cases cited. We recognize that the meaning of that sentence may be somewhat uncertain and ambiguous, but it is clear that it did not amount to a holding that the rulings made as to the constitutionality of the Act in those cases were adopted by this full bench decision.

*Judgment affirmed. All the Justices concur, except Mobley and Undercofler, JJ., who dissent.*

MOBLEY, Justice, dissenting. I do not agree with the ruling of the majority that the price fixing provision of the Milk Control Act violates the due process clause of the Constitution of this State. Mr. Chief Justice Reid, in the majority opinion upholding the price fixing provision of the 1937 Act in *Holcombe v. Georgia Milk Producers Confederation*, 188 Ga. 358 (3 SE2d 705), in Division 4, expressed my views as to why the Act does not violate the due process clause of the Georgia Constitution. His is a very learned and excellent opinion in which I heartily concur, and to which reference is made for a statement of my views.

I do not agree with the majority that the full bench decision of this court in *Harris v. Duncan*, 208 Ga. 561 (67 SE2d 692), is binding in this case, for in my opinion that case was bottomed on the erroneous assumption that the emergency provision of the Act (Ga. L. 1937, p. 247; *Code Ann.* § 42-523 et seq.) was stricken by an amendment (Ga. L. 1949, pp. 78-87) by striking § 24 of the 1937 Act, as amended, which struck the termination date of the Act. The emergency provision was left in the Act, and by the same amendment striking the termination date of the emergency, the legislature added many additional reasons why an emergency existed and why the milk industry is affected with a public interest.

Further, I am of the opinion that the full bench decision of *Fleisher v. Duncan*, 195 Ga. 309 (24 SE2d 15), decided January 14, 1943, prior to the decision in *Harris v. Duncan*, supra, is a binding precedent on this court in the present case. In *Fleisher v. Duncan*, supra, the Act was specifically attacked as being in violation of the due process clause of the Georgia Constitution, in that the petitioners were "compelled to pay higher prices . . . in violation of the rights of said complainants

to contract for and purchase milk in a free and unregulated price market." The court held that they could not prevail without showing "that the increases in price were not justified and were not fair and proper as being in accordance with agricultural and economic conditions, or by showing other facts."

Obviously, if the court had considered the Act unconstitutional, it would not have made this ruling, as that question would not have been reached. On the contrary, it is clear that the court, as shown in Headnote 3, based its ruling upon an affirmation and acceptance of the previous ruling of the court in the *Holcombe* and *Bohannon* cases. The court did pass on the price fixing provision of the Act as against the claim that it violated the due process clause of the State Constitution.

Further, the contention is made that *Fleisher v. Duncan*, supra, is distinguishable from *Harris v. Duncan*, supra, because the opinion in the *Fleisher* case expressly stated that, in view of other rulings, it was unnecessary to rule on the constitutional question. This is a misconstruction of that decision. The court did not say that it was unnecessary to pass upon the constitutionality of the price fixing provision of the Act as against the claim that it violated due process, which the court clearly did, but, on the contrary, stated that it was unnecessary for the court to determine "whether the Act was unconstitutional for any reason assigned that has not already been decided," and then cited the *Holcombe, Bohannon* and *Gibbs* decisions. *Fleisher v. Duncan*, 195 Ga. 309 (3), supra. The *Holcombe* and *Bohannon* cases had both held that the Milk Control Act did not violate the due process clause of the Georgia Constitution. Thus the conclusion is inescapable that the court approved the ruling that the Act does not violate the due process clause of the Georgia Constitution.

UNDERCOFLER, Justice, dissenting. The "Milk Control Act" (Ga. L. 1937, p. 247 as amended) has been attacked on constitutional grounds six times including the present suit: *Bohannon v. Duncan*, 185 Ga. 840 (196 SE 897) ; *Gibbs v. Milk Control Board of Georgia*, 185 Ga. 844 (196 SE 791) ; *Holcombe v. Georgia Milk Confederation*, 188 Ga. 358 (3 SE2d 705) ; *Fleisher v. Duncan*, 195 Ga. 309 (24 SE2d 15) ; *Harris v. Duncan*, 208 Ga.

561 (67 SE2d 692). The constitutionality of the Act was sustained until *Harris v. Duncan,* supra, where it was held that the price fixing provisions of the Act were unconstitutional because the milk business was not "affected with a public interest."

The constitutionality of price fixing regulations in the milk industry extends back to Nebbia v. New York, 291 U. S. 502 (54 SC 505, 78 LE 940, 89 ALR 1469) (1933). *Harris v. Duncan,* supra, followed the minority view in Nebbia (p. 554) which stated that, "a state legislature is without constitutional power to fix prices at which commodities may be sold, services rendered or property used, unless the business or property involved is 'affected with a public interest.' Considered affirmatively, 'it means that a business or property, in order to be affected with a public interest, must be such or be so employed as to justify the conclusion that it has been devoted to a public use and its use thereby in effect granted to the public.'" As stated, the court concluded that the milk business did not come within this rule. I believe the rationale of the *Harris* case is too restrictive and adhere to *Bohannon v. Duncan,* supra, and *Holcombe v. Georgia Milk Confederation,* supra, which upheld the constitutionality of the Georgia Milk Control Act and followed the majority view in the Nebbia case wherein it was stated (p. 523 et seq.), "Under our form of government the use of property and the making of contracts are normally matters of private and not of public concern. The general rule is that both shall be free of governmental interference. But neither property rights nor contract rights are absolute; for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or exercise his freedom of contract to work them harm. Equally fundamental with the private right is that of the public to regulate it in the common interest. . . These correlative rights, that of the citizen to exercise exclusive dominion over property and freely to contract about his affairs, and that of the state to regulate the use of property and the conduct of business, are always in collision. No exercise of the private right can be imagined which will not in some respect, however slight, affect the public; no exercise of the legislative prerogative to regulate the conduct of the

citizen which will not to some extent abridge his liberty or affect his property. But subject only to constitutional restraint the private right must yield to the public need. . . And the guaranty of due process, as has often been held, demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall have a real and substantial relation to the object sought to be attained. It results that a regulation valid for one sort of business, or in given circumstances, may be invalid for another sort, or for the same business under other circumstances, because the reasonableness of each regulation depends upon the relevant facts. . . The thought seems nevertheless to have persisted that there is something peculiarly sacrosanct about the price one may charge for what he makes or sells, and that, however able to regulate other elements of manufacture or trade, with incidental effect upon price, the state is incapable of directly controlling the price itself. This view was negatived many years ago. . . In several of the decisions of this court wherein the expressions 'affected with a public interest,' and 'clothed with a public use,' have been brought forward as the criteria of the validity of price control, it has been admitted that they are not susceptible of definition and form an unsatisfactory test of the constitutionality of legislation directed at business practices or prices. These decisions must rest, finally, upon the basis that the requirements of due process were not met because the laws were found arbitrary in their operation and effect. But there can be no doubt that upon proper occasion and by appropriate measures the state may regulate a business in any of its aspects, including the prices to be charged for the products or commodities it sells. . . The legislature is primarily the judge of the necessity of such an enactment, that every possible presumption is in favor of its validity, and that though the court may hold views inconsistent with the wisdom of the law, it may not be annulled unless palpably in excess of legislative power." As was said in *Holcombe v. Georgia Milk Confederation,* supra, (p. 375), "The price is therefore a means, and not an end. The Act as a whole (Ga. L. 1937, p. 260) seems to be designed, not to secure the greater or less price, but to secure an adequate

supply of wholesome milk; and if the price be one of the appropriate means, we can not condemn it." I cannot say that the price fixing provisions of the Georgia Milk Control Act. are unreasonable, arbitrary or capricious or have no relation to the object sought to be obtained in view of the legislative facts found therein including the declaration of an emergency, the previous similar holdings of this court on the same issue, the holdings of the Supreme Court of the United States, and the approval of a majority of the state supreme courts construing the validity of similar milk control Acts.

*Harris v. Duncan,* supra, is a full bench decision; however, I do not feel bound by it since it is predicated on the "Milk Control Act" (Ga. L. 1937, p. 247) as amended "with the emergency feature thereof stricken by the Act of 1949, p. 78." In my opinion this is an erroneous statement of fact because the Act of 1949 (Ga. L. 1949, p. 78) did not strike the legislature's declaration of an emergency but only deleted the expiration date of the Act. As a matter of fact, the Act of 1949 not only reaffirmed the declaration of legislative policy finding facts that constituted an emergency contained in the original Act of 1937 but added thereto a great number of additional reasons and findings of fact in support thereof. It can hardly be said that the legislature in the Act of 1949 intended to strike the emergency feature of the Act when it repealed only the expiration date of the Act, and when in the same Act they reaffirmed and amplified the emergency declaration.

### ON MOTION FOR REHEARING.

DUCKWORTH, C. J., ALMAND, P. J., NICHOLS and FRANKUM, JJ. The motion for a rehearing advances arguments that we cannot let pass unchallenged. The first argument is that "it does not appear that the five Justices who concurred in the majority decision did so on the basis that they were of the opinion that the provisions of the Milk Control Act empowering the Milk Commission to fix prices was unconstitutional as being in violation of the due process clause of the Constitution of this State" in that it appears the decision is predicated solely upon the proposition that *Harris v. Duncan,* 208 Ga. 561 (67 SE2d 692), a full bench decision, controlled our judgment. A casual

reading of the headnote in the instant case discloses that the majority expressly held the price fixing of the Milk Control Act violated the due process clause of the State Constitution. Justice Mobley in the first sentence of his dissent said: "I do not agree with the ruling of the majority that the price fixing provision of the Milk Control Act violates the due process clause of the Constitution of this State." Even if the unanimous decision in *Harris v. Duncan,* supra, was not in existence, we would hold such price fixing to be violative of the due process clause of the Georgia Constitution.

The second argument is that *Code* § 6-1611 which provides how full bench decisions of this court can be overruled or modified, has not had legal existence since the adoption of the 1945 Constitution because Art. VI, Sec. II, Par. VII of that Constitution (*Code Ann.* § 2-3707) expressly withdrew the power from the General Assembly to enact regulations governing the manner in which this court could hear and determine cases by providing the "Supreme Court shall have power to hear and determine cases when sitting in a body, under such regulations as may be prescribed by it." With this we agree. See our rules.

Before and since the adoption of the 1945 Constitution, this court has deliberately and consistently required a unanimous decision to overrule a unanimous decision. See *Cody v. Cody,* 221 Ga. 677 (146 SE2d 778); *Hood v. First Nat. Bank,* 219 Ga. 283 (133 SE2d 19); and *Rivers v. Cole Corp.,* 209 Ga. 406 (73 SE2d 196). Indeed by requiring the concurrence of seven Justices, whereas *Code* § 6-1611 requires only six, we demonstrate that we do not recognize it.

This court since its creation in 1845 has considered itself bound by its unanimous decisions and will respect and follow such decisions, overruling them only by a unanimous court which can be done without legislative authority.

Stare decisis et non quieta movere (Stand by the decisions and do not disturb settled points). The application of this doctrine is essential to the performance of a well-ordered system of jurisprudence. *Cobb v. State,* 187 Ga. 448, 452 (200 SE 796).

*Motion for rehearing denied.*

GRICE, Justice, concurring specially with opinion on motion

for rehearing. My view is that *Harris v. Duncan*, 208 Ga. 561 (67 SE2d 692), which is unanimous and unreversed, controls in the instant case. Insofar as the binding effect of that case is concerned, I agree with the opinion on motion for rehearing of Chief Justice Duckworth, Presiding Justice Almand, and Justices Nichols and Frankum. However, I do not agree with them that the price fixing provision of the Milk Control Act violates the due process clause of the State Constitution, and therefore I would overrule *Harris v. Duncan*, supra.