527 S.E.2d 763

**R.L. JORDAN COMPANY, INC., Plaintiff,**

v.

**BOARDMAN PETROLEUM, INC., Defendant.**

No. 25067.

Supreme Court of South Carolina.

Heard Oct. 5, 1999.

Decided Feb. 14, 2000.

Matthew A. Henderson and Joshua M. Henderson, of Henderson, Brandt & Vieth, of Spartanburg, for plaintiff.

William M. Grant, Jr., of Grant, Leatherwood & Pitts, P.A., of Greenville, for defendant.

PER CURIAM:

This certified question asks whether S.C.Code Ann. § 39–5–325(A) (Supp.1998) (the "motor fuel pricing statute") is unconstitutional because it violates the substantive due process guarantees of S.C. Const. art. I, § 3. We decide today to alter our traditional substantive due process analysis in challenges such as this to economic and social welfare legislation, but find ourselves unable to answer the question posed here in light of the procedural posture of the case. Accordingly, we remand rather than answer the question certified to us.

This federal action arises from plaintiff R.L. Jordan Oil's suit charging defendant Boardman has violated the motor fuel pricing statute at two of its gas stations, requiring Jordan to reduce prices at its nearby station. The suit seeks damages for Jordan's losses resulting from the price reductions. Boardman moved for judgment on the pleadings, alleging the statute violated the state constitution's due process clause. This certified question followed:

Does S.C.Code Ann. § 39–5–325(A) (Supp.1998) violate the substantive due process protections of S.C. Const. art. I, § 3? [1]

The "motor fuel pricing statute," a part of the South Carolina Unfair Trade Practices Act, provides:

(A) Except as otherwise permitted to meet competition as provided by this chapter, it is declared an unfair trade practice and unlawful for any person who is in the retail business of selling motor fuel to sell motor fuel of like grade and quality at retail at a price which is below the cost of acquiring the product plus taxes and transportation where the intent or effect is to destroy or substantially lessen competition or to injure a competitor.

Until today, we have adhered to the traditional substantive due process analysis developed by the United States Supreme Court during the first third of the 20th century. Under this

---

[1]. The Attorney General declined the Court's invitation to participate in this matter.

"Lochner Era" [2] approach, statutes regulating private economic relationships, such as this price control statute, are subject to a unique constitutional test, which most fail to pass. The traditional approach acknowledges that, "Beyond doubt, the state has the power to regulate and control the price that one in private business may charge for goods or services where such business is 'affected with a public interest.'" *Gwynette v. Myers*, 237 S.C. 17, 115 S.E.2d 673 (1960) [citing *Munn v. Illinois*, 94 U.S. 113, 24 L.Ed. 77 (1877) ]. There is no precise test to determine whether a business is 'affected with a public interest.' *Id.* Even if a business is affected with a public interest, governmental regulation is "not a matter solely within the legislative discretion. It depends on the nature of the business, on the feature which touches the public, and on the abuse reasonably to be feared." *Stone v. Salley*, 244 S.C. 531, 137 S.E.2d 788 (1964). Price controls are "justifiable under the police power only when the industry is affected with a public interest in a sense that it may fairly be said that it has been devoted to the public use." *Id.*

Only South Carolina and Georgia have continued to adhere to this traditional approach.[3] The modern rule gives great deference to legislative judgment on what is reasonable to promote the public welfare when reviewing economic and social welfare legislation. 2 Rotunda & Nowak, *Treatise on Constitutional Law*, § 15.4 (1992). Legislation is not "overturned unless the law has no rational relationship to any legitimate interest of government." *Id.* at p. 407. This is the same standard we apply when reviewing substantive due process challenges to other types of statutes. *E.g., State v. Kiser*, 288 S.C. 441, 343 S.E.2d 292 (1986).

Accordingly, we overrule our cases which apply the traditional approach,[4] and adopt this standard for reviewing all

---

**2.** *Lochner v. New York*, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905). The heyday of the Lochner Era was approximately 1905–1937, and it led to President Roosevelt's 'court-packing' scheme.

**3.** Georgia has invalidated under its due process clause their statute forbidding below cost retail gasoline sales which lessen or tend to lessen competition. *Strickland v. Ports Petroleum Co.*, 256 Ga. 669, 353 S.E.2d 17 (1987).

**4.** We overrule "the Dairy Commission cases" to the extent they conflict with this new rule. *State Dairy Comm'n v. Pet, Inc.*, 283 S.C. 359, 324

substantive due process challenges to state statutes: "Whether it bears a reasonable relationship to any legitimate interest of government."

As noted above, this constitutional challenge is raised by a motion for judgment on the pleadings. Given this procedural posture, we decline to decide whether the motor fuel pricing statute is reasonably related to any legitimate state goal, and instead remand the matter to the United States District Court for further proceedings in light of the new standard we adopt today.

CERTIFIED QUESTION REMANDED.

S.E.2d 56 (1984); *Richbourg's Shoppers Fair, Inc. v. Stone,* 249 S.C. 278, 153 S.E.2d 895 (1967); *Stone v. Salley,* 244 S.C. 531, 137 S.E.2d 788 (1964); and *Gwynette v. Myers,* 237 S.C. 17, 115 S.E.2d 673 (1960).